```
           ESTADO LIBRE ASOCIADO DE PUERTO RICO
               EN EL TRIBUNAL DE APELACIONES
                         PANEL III
```

| | | |
|---|---|---|
| RAFAEL ANTONIO BENÍTEZ PARRILLA<br><br>Apelante<br><br>v.<br><br>JUNTA DE RETIRO DEL GOBIERNO DE PUERTO RICO, POR SÍ Y A NOMBRE DE LOS SISTEMAS DE RETIRO DEL GOBIERNO DE PUERTO RICO, POR CONDUCTO DE LUIS M. COLLAZO RODRÍGUEZ EN SU CAPACIDAD DE DIRECTOR EJECUTIVO Y OTROS<br><br>Apelada | **KLAN202400112** | *Apelación* procedente del Tribunal de Primera Instancia Sala Superior de San Juan<br><br>Civil Núm. SJ2022CV09974<br><br>Sobre: Incumplimiento de Contrato de Seguros; Daños Contractuales; restitución; Dolo y Fraude |

Panel integrado por su presidente el Juez Figueroa Cabán, el Juez Bonilla Ortiz, la Jueza Mateu Meléndez y la Jueza Prats Palerm.

Bonilla Ortiz, Juez Ponente

## **SENTENCIA**

En San Juan, Puerto Rico, a 2 de abril de 2024.

Comparece el Sr. Rafael Antonio Benítez Parrilla (señor Benítez o apelante) y nos solicita que revisemos una *Sentencia Enmendada Nunc Pro Tunc* emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan, la cual fue notificada el 9 de enero de 2024.[1] En virtud de esta, el foro primario desestimó la *Demanda* de autos contra el Estado Libre Asociado de Puerto Rico (ELA), debido a que el apelante presentó tardíamente el "*proof of claim*" que evidenciaba su reclamación ante el ELA, además que, carece de jurisdicción sobre la materia

---

[1] El 2 de enero de 2024, el foro primario notificó la *Sentencia*, mediante la cual desestimó la demanda contra el ELA. No obstante, el 9 de enero de 2024, notificó una *Sentencia Enmendada Nunc Pro Tunc*, en la cual aclaró que desestimaba la totalidad del pleito contra todas las partes co-demandadas.

para entender en la interpretación de las disposiciones del Plan de Ajuste.

Por los fundamentos que se exponen a continuación, **REVOCAMOS** el dictamen apelado.

## I.

El 14 de noviembre de 2022, el señor Benítez presentó una *Demanda* contra el ELA, la Junta de Retiro del ELA, y el Banco Popular de Puerto Rico (en conjunto, parte apelada), por alegado incumplimiento de contrato de seguros, daños contractuales, restitución, dolo y fraude.[2] En esencia, alegó que, el 20 de octubre de 1989, mientras era empleado del Departamento de Corrección de Puerto Rico y junto a su esposa, la Sra. Nancy Martínez Alicea (Q.E.P.D.), hicieron un préstamo hipotecario a través del Sistema de Retiro y su Antigua Junta de Síndicos, vencedero al 1 de noviembre de 2019. Añadió que, conforme era requerido, dentro del préstamo hipotecario, adquirió un seguro de vida hipotecario colectivo mancomunado, el cual en caso de su muerte o la de su esposa, la hipoteca quedaría salda. A su vez, expresó que el pago mensual por el préstamo hipotecario incluía el pago de la prima del seguro de vida. Sostuvo que, mientras era empleado del ELA, le descontaban automáticamente de su sueldo la cantidad correspondiente al pago del préstamo hipotecario, que incluía la prima del seguro de vida.

Según surge de expediente, el 31 de diciembre de 2012, el señor Benítez se jubiló, y se acogió a una pensión de retiro de $2,973.75. Sostuvo que, previo a

---

[2] El 27 de febrero de 2023, el señor Benítez presentó una Demanda Enmendada, para incluir al ELA como demandado y sustituir a la Antigua Administración de los Sistemas de Retiro, por la Junta de Retiro del Gobierno de Puerto Rico. Véase, *Demanda Enmendada*, anejo IV, págs. 38-60 del apéndice del recurso.

su jubilación, gestionó toda la documentación para que le continuaran descontando de su pensión el pago del préstamo hipotecario, a partir del 1 de enero de 2013. Esbozó que, el Sistema de Retiro asumió la responsabilidad y obligación. No obstante, alegó que la parte apelada negligentemente omitió procesar los pagos de pensión a tiempo, provocando un atraso en el préstamo hipotecario desde enero 2013 hasta marzo 2014. Añadió que, nunca le enviaron un aviso o notificación de que su préstamo hipotecario y su póliza de seguro de vida estaban en atrasos o cancelados. El apelante arguyó que, le ofrecieron un plan de pago, para que pudiera ponerse al día con los atrasos en el pago del principal e intereses. Además, sostuvo que la prima del seguro de vida hipotecario colectivo se continuó pagando automáticamente con los fondos acumulados en "escrow" de la cuenta del préstamo del Banco Popular.

El 24 de abril de 2016, su esposa falleció, por lo que, el apelante presentó al Sistema de Retiro su reclamación para el pago de la cubierta del seguro de vida hipotecario colectivo mancomunada. Sin embargo, el Sistema de Retiro le notificó que la cubierta del seguro de vida no iba a ser pagada para saldar la hipoteca, puesto que, la póliza había quedado cancelada desde enero 2013. Así las cosas, el apelante manifestó que la parte apelada cometió fraude e incumplimiento contractual, por lo que, sostuvo que dicha parte es responsable por el pago del balance de cancelación total de la hipoteca.

Luego de varias incidencias procesales, el 20 de marzo de 2023, Banco Popular de Puerto Rico, presentó

*Contestación a Demanda Enmendada*.[3] Mediante esta, afirmó que eran la entidad que administraba el préstamo hipotecario, y sus responsabilidades se limitaban a pagar las obligaciones del préstamo, los cuales incluían los pagos de contribuciones y seguros, incluyendo seguros opcionales como el seguro de vida. A su vez, sostuvo que, aun cuando no recibieron el pago del préstamo, continuaron pagando el seguro de vida a la Junta de Retiro. Además, que nunca tuvieron control sobre la nómina del apelante, tampoco que debitaban de la nómina el pago del préstamo, ni tenían récord de que la hipoteca tuviera servicio de pago directo. Por lo tanto, arguyeron que no son responsables frente al señor Benítez por los alegados daños, según reclamados en la demanda.

Posteriormente, el 3 de mayo de 2023, el ELA presentó una *Moción en Solicitud de Orden*, mediante la cual compareció sin someterse a la jurisdicción.[4] En síntesis, informaron que, desde el 3 de mayo de 2017, el Tribunal de Distrito de los Estados Unidos está llevando a cabo el proceso de reestructuración de la deuda de Puerto Rico, en virtud de la Sección 315(b) de la ley conocida como "*Puerto Rico Oversight Maganement, and Economic Stability Act*" (PROMESA), 48 USCA sec. 2101 *et seq*. Añadieron que, el 16 de enero de 2018, a través de la Junta de Supervisión Fiscal, presentaron una moción para que se dispusiera una fecha límite para la presentación del "*proof of claims*". Mediante la cual, dicha fecha límite había sido extendida hasta el 29 de

---

[3] *Contestación a Demanda Enmendada*, anejo VII, págs. 74-93 del apéndice del recurso.
[4] *Moción en Solicitud de Orden*, anejo X, págs. 104-115 del apéndice del recurso.

junio de 2018. Por consiguiente, le solicitaron al foro primario que emitiera una orden para que el señor Benítez presentara su *"proof of claim"*, y evidenciara su reclamación contra éstos. En caso de no haberlo presentado, procedería su desestimación, con perjuicio.

El 17 de mayo de 2023, el foro primario notificó una *Orden*, mediante la cual declaró *Ha Lugar* la moción del ELA, y le solicitó al apelante que proveyera confirmación del *"proof of claim"* en el caso de Título III.[5]

Así las cosas, el 25 de mayo de 2023, el señor Benítez presentó una *Moción en Cumplimiento de Orden*.[6] Alegó que, a pesar de haber presentado un *"proof of claim"* a la Petición de Quiebra del ELA, ésta es irrelevante y no incide sobre la decisión de la descarga de la deuda. Debido a que, hay ciertas excepciones a la Ley, aun cuando se haya presentado un *"proof of claim"*:

> *Upon the Effective Date and independent of the distributions provided for under the Plan, the Debtors and Reorganized Debtors shall be discharged and released from any and all Claims, Causes of Action, and any other debts that arose, in whole or in part, prior to the Effective Date (including prior to the Petition Date), whether or not (a) a proof of claim based upon such Claim is filed or deemed filed under section 501 of the Bankruptcy Code.*

Por consiguiente, sostuvo que acorde con la Sección 1.421 del Plan de Ajuste bajo PROMESA, no se deben considerar como descargas, las causas de acción o reclamaciones cuando hubo fraude, negligencia crasa, mala fe, entre otras.

---

[5] Véase, *Orden*, entrada núm. 57 en SUMAC.
[6] Véase, *Moción en Solicitud de Orden*, entrada núm. 59 en SUMAC.

El 26 de mayo de 2023, el foro primario emitió una *Orden* concediéndole al ELA, 10 días para que se expresara en torno a la moción presentada por el apelante.[7]

En cumplimiento con dicha orden, el 5 de junio de 2023, el ELA compareció. En su moción, sostuvo que en efecto el señor Benítez presentó el "*proof of claim*", sin embargo, este fue tardío. Señalaron que, según surge del portal, el "*proof of claim*" fue presentado el 13 de junio de 2022, y la fecha límite para presentarlo había sido el 29 de junio de 2018. Por lo tanto, al haber sido eliminada la reclamación, y en consecuencia descargada las causas de acción en contra del ELA, lo que procedía era la desestimación con perjuicio. En cuanto, al reclamo por fraude o falsas representaciones, alegó que, PROMESA no incorporó la Sección 523(a)(2) como parte de las excepciones para el descargue.

El 9 de junio de 2023, el señor Benítez presentó su *Oposición a Moción en Cumplimiento de Orden (Doc 61)*.[8] Mediante esta, planteó que el ELA omitió rebatir el argumento en cuanto a que "la Sección 1.421 del Plan de Ajuste bajo PROMESA […], dispone expresamente la excepción de que no se deben considerar como descargas las causas de acción o reclamaciones por fraude, negligencia crasa, mala fe, entre otras." A su vez, arguyó que el ELA omitió señalar que la Sección 944 del Código de Quiebras, expresamente adopta la Sección 301 de PROMESA, la cual dispone que el deudor no queda descargado de una deuda cuando su propio Plan contiene una excepción, como la Sección 1.421. Por lo tanto,

---

[7] Véase, *Orden*, entrada núm. 60 en SUMAC.
[8] *Oposición a Moción en Cumplimiento de Orden (Doc 61)*, anejo XIII, págs. 122-124 del apéndice del recurso.

reiteró que es irrelevante si se presentó oportunamente el "*proof of claim*".

El 15 de junio de 2023, el ELA presentó *Réplica a Oposición a Moción en Cumplimiento de Orden [Doc 60].*[9] En síntesis, sostuvo que la excepción de dolo y fraude a la que hace énfasis el apelante es irrelevante a las causas de acción o reclamaciones contra éstos. Debido a que, el señor Benítez no es considerado como un deudor, deudor reorganizado, o agente pagador con una reclamación contra un "*Released Party*". Alegaron que, el apelante basa su reclamo en la Sección 1.421 del Plan de Ajuste, el cual se relaciona al "*Released Claims*" y el cual dispone:

> **Released Claims**: Collectively, (a) with respect to those Entities party to the GO/PBA Plan Support Agreement and the HTA/CCDA Plan Support Agreement, Claims and Causes of Action released hereunder and in accordance with the GO/PBA Plan Support Agreement and the HTA/CCDA Plan Support Agreement, (b) Claims and Causes of Action that arise in, are related to or have been or could have been asserted against the Debtors or their Assets in the Title III Cases, (c) Claims and Causes of Action that have been or could have been asserted by the Debtors (with respect to releases given by the Debtors) and by Creditors or the Government Parties relating to Claims they have against the Released Parties (with respect to releases given by Releasing Parties), (d) Claims and Causes of Action related to the Fourth Amended Stipulation Between the Commonwealth of Puerto Rico and the Puerto Rico Highways and Transportation Authority Regarding the Tolling of Statute of Limitations and Consent Order [Case No. 17-3283- LTS, ECF No. 15854], as amended, and Claims and Causes of Action related to the Third Amended Stipulation and Consent Order Between Title III Debtors (Other Than COFINA) and the Puerto Rico Fiscal Agency and Financial Advisory Authority Acting on Behalf of the Government Entities Listed on Appendix "B" Regarding the Tolling of Statute of Limitations [Case No. 17- 3283- LTS, ECF No. 15795], as amended, and (e)

---

[9] *Réplica a Oposición a Moción en Cumplimiento de Orden [Doc 60],* anejo XIV, págs. 125-129 del apéndice del recurso.

Claims that otherwise arise from or relate to the Title III Cases, the Plan, the GO/PBA Plan Support Agreement, the HTA/CCDA Plan Support Agreement, Retiree Committee Plan Support Agreement, the AFSCME Plan Support Agreement, any plan support agreement with AMPR, the ERS Stipulation, the Committee Agreement, and the compromises set forth herein, including, without limitation, in connection with or related to any of the Government Parties, and their respective subsidiaries, assets, liabilities, operations, or property; provided, however, that, "Released Claims" is not intended to include, nor shall it have the effect of including, Claims or Causes of Action unrelated to the Debtors or Claims or Causes of Action for gross negligence, willful misconduct or intentional fraud asserted, or that could have been asserted, whether sounding in contract or tort; and, provided, further, that "Released Claims: is not intended to release, nor shall it have the effect of releasing, any Entity in its capacity as a defendant in any Avoidance Action, including a party to a tolling agreement with the Commonwealth and/or ERS related to such Cause of Action; and, provided, further, that "Released Claims" is not intended to release, nor shall it have the effect of releasing, any party from the performance of its obligations in accordance with the Confirmation Order or the Plan, including, without limitation, performance of obligations arising from or related to New GO Bonds, the New Refunding Bonds, the CVIs or, with respect to the Government Parties, under any policy of insurance or related documents issued by a Monoline; and, provided, further, that "Released Claims" shall not include claims against CCDA, HTA, MBA, PFC, PRASA, PRIFA, UPR, and PREPA.

Por lo tanto, el ELA alegó que todo lo relacionado al "*Released Claims*" no es de aplicación al apelante, y la excepción de la descarga sobre dolo o fraude, es irrelevante en el caso de autos.

En desacuerdo, el 27 de junio de 2023, el señor Benítez presentó una *Dúplica a Réplica del ELA (DOC 66)*.[10] Mediante esta, arguyó que el ELA intentó clasificarlo dentro del inciso (c), que trata mas bien

---

[10] *Dúplica a Réplica del ELA (DOC 66)*, anejo XV, págs. 130-135 del apéndice del recurso.

sobre acciones del "Debtor" y de las agencias del ELA, lo cual no aplica en la presente controversia. Mientras, sostuvo que, el inciso que es de su aplicación es el (b) de la Sección 1.421 del Plan de Ajuste, el cual dispone: "*Released Claims: […], (b) Claims and Causes of Action that arise in, are related to or have been or could have been asserted against the Debtors or their Assets in the Title III Cases […]*". Por lo tanto, aun cuando la causa de acción que dispone el inciso (b) quedaría descargada, a manera de excepción, su causa de acción no lo estaría por tratarse de una acción por fraude.

Así las cosas, y luego de varios trámites procesales, el 2 de enero de 2024 el foro primario emitió una *Sentencia*.[11] No obstante, el 9 de enero de 2024, notificó una *Sentencia Enmendada Nunc Pro Tunc*.[12] Mediante el dictamen apelado, el foro primario declaró *Ha Lugar* la solicitud de desestimación presentada por el ELA, y desestimó la totalidad del pleito contra todas las partes co-demandadas. Determinó que, aun cuando el señor Benítez presentó el "*proof of claim*" tardíamente, no tenía jurisdicción sobre la materia. Concluyó que, conforme a la disposición de retención de jurisdicción que establece el Plan de Ajuste, están vedados de realizar interpretaciones sobre el Plan de Ajuste o los casos de Título III de PROMESA presentados ante la corte de distrito.[13] Por lo tanto, declaró con lugar la

---

[11] *Sentencia*, anejo XI, págs. 157-162 del apéndice del recurso.
[12] *Sentencia Enmendada Nunc Pro Tunc*, anejo I, págs. 1-7 del apéndice del recurso. A los únicos efectos de establecer en la parte V de la *Sentencia*, que desestimó la totalidad del pleito contra todas las partes co-demandadas.
[13] **Retention of Jurisdiction**: The Title III Court shall retain and have exclusive jurisdiction over any matter arising under PROMESA, arising in or related to, the Title III Cases and the Plan, or that relates to the following:
(g) to resolve any cases, controversies, suits, disputes or other challenges of any kind that may arise in connection with the consummation, interpretation or enforcement of the Plan, the

solicitud de desestimación presentada por el ELA, al encontrarse sin jurisdicción sobre la materia.

Inconforme, el señor Benítez presentó oportunamente el recurso que nos ocupa y señaló los siguientes errores:

> PRIMER ERROR: ERRÓ EL TPI AL DESESTIMAR LA DEMANDA POR ENTENDER QUE NO TIENE JURISDICCIÓN SOBRE LA MATERIA PARA HACER VALER LA EXCEPCIÓN A DESCARGA DE RECLAMACIONES POR FRAUDE CONTENIDA EN EL PLAN DE AJUSTE DE LA QUIEBRA BAJO LA LEY PROMESA PARA RECLAMACIONES CONTRA EL ESTADO.
>
> SEGUNDO ERROR: ERRÓ EL TPI AL UTILIZAR EL INCISO "C" DE LA SEC. 1.421 DEL PLAN QUE ES APLICABLE AL "DEBTOR" (ELA) Y "GOVERNMENT PARTIES", PARA DESESTIMAR LA DEMANDA, APLICÁNDOLE DICHA DISPOSICIÓN AL DEMANDANTE.

El 15 de febrero de 2024, emitimos una *Resolución*, mediante la cual se le concedió a la parte apelada el término dispuesto en el Reglamento de este Tribunal para que presentaran sus alegatos.

El 5 de marzo de 2024, la Junta de Retiro presentó una moción solicitando una prórroga para presentar su alegato. De igual forma, el 6 de marzo de 2024, el ELA compareció solicitando un término adicional para poder presentar su alegato.

Luego de examinar las mociones de la parte apelada, el 13 de marzo de 2024, emitimos una *Resolución* concediéndoles hasta el 20 de marzo de 2024.

En cumplimiento con dicha orden, el ELA y la Junta de Retiro presentaron sus respectivos alegatos. Por lo tanto, con el beneficio de la comparecencia de las partes, procedemos a disponer del recurso de epígrafe.

---

Confirmation Order, Definitive Documents or any other contract, instrument, security, release or other agreement or document that is entered into or delivered pursuant to the Plan or any Entity's rights arising from or obligations incurred in connection with the Plan or such documents.

## II.

### -A-

Una persona contra quien se haya presentado una reclamación judicial puede solicitar su desestimación cuando, de la faz de las alegaciones de la demanda, surja que alguna defensa afirmativa puede derrotar la pretensión del demandante. Véase, *Conde Cruz v. Resto Rodríguez*, 205 DPR 1043, 1077-1078 (2020); *Trans-Oceanic Life Ins. v. Oracle Corp*., 184 DPR 689, 701 (2012).

A tales efectos, la Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2, dispone lo siguiente:

> Toda defensa de hechos o de derecho contra una reclamación se expondrá en la alegación responsiva excepto que, a opción de la parte que alega, las siguientes defensas pueden hacerse mediante una moción debidamente fundamentada:
>
> (1) Falta de jurisdicción sobre la materia;
>
> (2) Falta de jurisdicción sobre la persona;
>
> (3) Insuficiencia del emplazamiento;
>
> (4) Insuficiencia del diligenciamiento del emplazamiento;
>
> (5) Dejar de exponer una reclamación que justifique la concesión de un remedio;
>
> (6) Dejar de acumular una parte indispensable;
>
> […] Si en una moción en que se formula la defensa (5) se exponen materias no contenidas en la alegación impugnada, y éstas no son excluidas por el tribunal, la moción deberá ser considerada como una solicitud de sentencia sumaria y estará sujeta a todos los trámites ulteriores provistos en la Regla 36 hasta su resolución final, y todas las partes deberán tener una oportunidad razonable de presentar toda materia pertinente a tal moción bajo dicha regla. Regla 10.2 de Procedimiento Civil, *supra*.

La precitada regla establece los fundamentos para que una parte en un pleito pueda solicitar la desestimación de una demanda en su contra, mediante la

presentación de una moción fundamentada en cualquiera de los motivos en ella expuestos. *El Día, Inc. v. Mun. de Guaynabo*, 187 DPR 811, 820-821 (2013); *Asoc. Fotoperiodistas v. Rivera Schatz*, 180 DPR 920, 935 (2011). En particular, la Regla 10.2(5) de Procedimiento Civil, *supra*, dispone que el demandado puede fundamentar su solicitud en que la demanda no expone "una reclamación que justifique la concesión de un remedio." En tales casos, la desestimación solicitada se dirige a los méritos de la controversia y no a los aspectos procesales. *Montañez v. Hosp. Metropolitano,* 157 DPR 96 (2002).

En fin, la desestimación de la reclamación judicial procede cuando surja de los hechos bien alegados en la demanda que la parte demandante no tiene derecho a remedio alguno. *Torres, Torres v. Torres et al.,* 179 DPR 481, 501 (2010). Para alcanzar dicha conclusión, es necesario que el tribunal considere ciertas todas las alegaciones fácticas que hayan sido aseveradas de manera clara en la demanda. *Rivera Sanfeliz et al. v. Jta. Dir. FirstBank*, 193 DPR 38, 49 (2015); *Colón v. Lotería,* 167 DPR 625, 649 (2006).

Así, el Tribunal Supremo de Puerto Rico ha expresado en diversas ocasiones que, ante una moción de desestimación, las alegaciones hechas en la demanda hay que interpretarlas conjuntamente, liberalmente y de la manera más favorable posible para la parte demandante. *Colón v. Lotería*, supra, pág. 649; *Dorante v. Wrangler of P.R.,* 145 DPR 408, 414 (1998).

-B-

El Congreso de Estados Unidos promulgó la Ley PROMESA, con el propósito de hacerle frente a la

situación económica que atraviesa Puerto Rico. La Ley ha hecho viable la restructuración de la deuda a través de una Petición de Quiebra presentada el 3 de mayo de 2017, al amparo del Título III de PROMESA, 48 USCA sec. 2161 *et seq*. Así pues, provocó la paralización automática de los pleitos que generalmente reclaman, como parte de los remedios, una compensación monetaria. Particularmente, los pleitos presentados contra el ELA antes de que se iniciara la quiebra. 48 USCA sec. 2161(a); 11 USC secs. 362 y 922; *Depto. de Hacienda v. COTIARI,* 203 DPR 1049 (2020).

"La paralización automática no es otra cosa que una protección al deudor de las reclamaciones en su contra, instadas antes de presentarse la petición de quiebra." *Requena Mercado v. Policía de Puerto Rico*, 205 DPR 285 (2020); *Marrero Rosado v. Marrero Rosado*, 178 DPR 476 (2010). Tiene como objetivo principal, liberar al deudor de presiones financieras mientras se dilucida el procedimiento de quiebra. *Lacourt Martínez v. Jta. Lib. et al*, 198 DPR 786, 788 (2017). En esencia, la paralización "constituye una de las protecciones básicas que, de ordinario, ofrece el procedimiento de quiebras al deudor, pues tiene como propósito protegerlo de reclamaciones de los acreedores, a la vez que protege a estos últimos de las reclamaciones de otros acreedores." *Depto. de Hacienda v. COTIARI*, supra. Véase, además: 3 Collier on Bankruptcy Sec. 362.03 esc. 6 (2019).

De otra parte, nuestro Tribunal Supremo ha reconocido unánimemente que los tribunales locales poseen jurisdicción concurrente para evaluar si un caso está efectivamente paralizado o si está sujeto a las excepciones de la paralización, en virtud del Título III

de la Ley PROMESA. *Requena Mercado v. Policía de Puerto Rico,* supra; *Lab. Clínico et al. v. Depto. Salud et al.,* supra, pág. 792; *Lacourt Martínez et al. v. JLBP et al.,* supra, pág. 788.

Ahora bien, la Corte de Distrito de Estados Unidos emitió el *Order and Judgment Confirming Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority* ("Confirmation Order"). Por virtud de esta, se confirmó el *Modified Eighth Amended Title III Joint Plan Of Adjustment Of The Commonwealth Of Puerto Rico*, mejor conocido como el Plan de Ajuste de la Deuda y se determinó que el 15 de marzo de 2022 sería la fecha de efectividad. El *"Confirmation Order"* tuvo varias consecuencias jurídicas importantes en torno al proceso de quiebras del ELA. En lo pertinente, el inciso (59) ordena un *injunction* sobre las reclamaciones instadas en las siguientes circunstancias:

> 59. <u>**Injunction on Claims**</u>.
>
> Except as otherwise expressly provided in section 92.11 of the Plan, this Confirmation Order, or such other Final Order of the Title III Court that is applicable, all Entities who have held, hold, or in the future hold Claims or any other debt or liability that is discharged or released pursuant to section 92.2 of the Plan or who have held, hold, or in the future hold Claims or any other debt or liability discharged or released pursuant to section 92.2 of the Plan are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing, directly or indirectly, in any manner, any action or other proceeding (including, without limitation, any judicial, arbitral, administrative, or other proceeding) of any kind on any such Claim or other debt or liability discharged pursuant to the Plan against any of the Released Parties or any

of their respective assets or property, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree, or order against any of the Released Parties or any of their respective assets or property on account of any Claim or other debt or liability discharged pursuant to the Plan, (c) creating, perfecting, or enforcing any encumbrance of any kind against any of the Released Parties or any of their respective assets or property on account of any Claim or other debt or liability discharged pursuant to the Plan, and (d) except to the extent provided, permitted or preserved by sections 553, 555, 556, 559, or 560 of the Bankruptcy Code or pursuant to the common law right of recoupment, asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from any of the Released Parties or any of their respective assets or property, with respect to any such Claim or other debt or liability discharged pursuant to the Plan. Such injunction shall extend to all successors and assigns of the Released Parties and their respective assets and property. Notwithstanding the foregoing, without prejudice to the exculpation rights set forth in section 92.7 of the Plan and decretal paragraph 61 hereof, nothing contained in the Plan or this Confirmation Order is intended, nor shall it be construed, to be a non-consensual third-party release of the PSA Creditors, AFSCME, and of their respective Related Persons by Creditors of the Debtors.

Por lo tanto, el inciso (59) del "*Confirmation Order*" tiene el efecto de paralizar las reclamaciones pasadas, presentes y futuras de todas las entidades frente al deudor, que incluye aquellos hechos que se suscitaron con posterioridad a la petición de quiebra. Este párrafo dispuso un mecanismo de interdicto permanente que, desde el 15 de marzo de 2022, sustituyó el efecto de la paralización automática que proveían las Secciones 362 y 922 del Código de Quiebras Federal, recogidas en la Sección 301 de PROMESA.

Por otro lado, la Sección 92.2 del Plan de Ajuste al que hace alusión la precitada disposición estipula el

mecanismo de descarga y relevo de acciones.  La aludida

sección lee como sigue:

### 92.2 Discharge and Release of Claims and Causes of Action:

a) Except as expressly provided in the Plan or the Confirmation Order, all distributions and rights afforded under the Plan shall be, and shall be deemed to be, in exchange for, and in complete satisfaction, settlement, discharge and release of, all Claims or Causes of Action against the Debtors and Reorganized Debtors that arose, in whole or in part, prior to the Effective Date, relating to the Title III Cases, the Debtors or Reorganized Debtors or any of their respective Assets, property, or interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, and regardless of whether any property will have been distributed or retained pursuant to the Plan on account of such Claims or Causes of Action; provided, however, that, without prejudice to the exculpation rights set forth in Section 92.7 hereof, nothing contained in the Plan or the Confirmation Order is intended, nor shall it be construed, to be a grant of a non-consensual third-party release of the PSA Creditors, AFSCME, and of their respective Related Persons by Creditors of the Debtors.  Upon the Effective Date, the Debtors and Reorganized Debtors shall be deemed discharged and released from any and all Claims, Causes of Action and any other debts that arose, in whole or in part, prior to the Effective Date (including prior to the Petition Date), and Claims of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code and PROMESA Section 407, whether or not (a) a proof of claim based upon such Claim is filed or deemed filed under section 501 of the Bankruptcy Code, (b) such Claim is allowed under section 502 of the Bankruptcy Code and PROMESA Section 407 (or is otherwise resolved), or (c) the holder of a Claim based upon such debt voted to accept the Plan. For the avoidance of doubt, nothing contained herein or in the Confirmation Order shall release, discharge or enjoin any claims or causes of action against PREPA arising from or related to PREPA-issued bonds, including, without limitation, Monoline-issued insurance pertaining thereto, and PREPA is not releasing any claims or causes of action against any non-Debtor Entity. Claims and causes of action against PREPA arising from or related to PREPA issued bonds, and releases against

> PREPA and its assets shall be addressed in PREPA's Title III case, including, without limitation, any plan of adjustment therein.

Las disposiciones previamente esbozadas, tienen el efecto de descargar todos los reclamos, causas de acción y cualquier deuda que tuvieran los deudores. Indiscutiblemente, dista de la paralización automática de pleitos dispuesto en el Título III de PROMESA, la cual establecía como objetivo "preservar el caudal del deudor para que se pueda llevar un proceso ordenado." *Vera González v. ELA*, 199 DPR 995, 997 (2018) (Martínez Torres, opinión de conformidad). Sin embargo, cuando nos referimos al descargue de las obligaciones, se trata del "fin último del proceso de quiebras y ocurre al final de este." *Íd*. pág. 999.

De otra parte, la Sección 1.421 del Plan de Ajuste, dispone lo que es un "*Released Claims*" como:

> 1.421 **Released Claims**: Collectively, (a) with respect to those Entities party to the GO/PBA Plan Support Agreement, the HTA/CCDA Plan Support Agreement, and the PRIFA Plan Support Agreement, Claims and Causes of Action released hereunder and in accordance with the GO/PBA Plan Support Agreement, the HTA/CCDA Plan Support Agreement, and the PRIFA Plan Support Agreement, respectively, (b) Claims and Causes of Action that arise in, are related to or have been or could have been asserted against the Debtors or their Assets in the Title III Cases, (c) Claims and Causes of Action that have been or could have been asserted by the Debtors (with respect to releases given by the Debtors) or the Government Parties relating to Claims they have against the Released Parties (with respect to releases given by Releasing Parties) […]

A su vez, establece que no se deben considerar como descargadas las causas de acción o reclamaciones por negligencia crasa, o fraude:

> […] 'Released Claims' is not intended to include, nor shall it have the effect of including, Claims or Causes of Action unrelated to the Debtors or Claims or Causes

of Action for gross negligence, willful misconduct or intentional fraud asserted […].

Finalmente, en lo que respecta al caso, en la Sección 91.1 del Plan de Ajuste, contiene una disposición sobre retención de jurisdicción, el cual establece:

> 91.1 **Retention of Jurisdiction**: The Title III Court shall retain and have exclusive jurisdiction over any matter arising under PROMESA, arising in or related to, the Title III Cases and the Plan, or that relates to the following:
>
> (g) to resolve any cases, controversies, suits, disputes or other challenges of any kind that may arise in connection with the consummation, interpretation or enforcement of the Plan, the Confirmation Order, Definitive Documents or any other contract, instrument, security, release or other agreement or document that is entered into or delivered pursuant to the Plan or any Entity's rights arising from or obligations incurred in connection with the Plan or such documents; […].

### III.

Para poder determinar si el foro primario cometió o no los errores señalados por el señor Benítez, es menester reseñar, en breve síntesis, los hechos importantes y trámites procesales.

El 14 de noviembre de 2022, el apelante presentó una *Demanda* en la que reclamó incumplimiento de contrato de seguros, daños contractuales, restitución, dolo y fraude contra el ELA, la Junta de Retiro del ELA, y el Banco Popular de Puerto Rico.

El 3 de mayo de 2023, el ELA compareció sin someterse a la jurisdicción, y presentó una *Moción en Solicitud de Orden*, mediante la cual, le solicitaron al foro apelado que emitiera una orden para que el señor Benítez presentara su "*proof of claim*", y evidenciara su

reclamación contra éstos, y en caso de no presentarlo, procediera a desestimar el caso, con perjuicio.

Así pues, el 25 de mayo de 2023, el apelante presentó una *Moción en Cumplimiento de Orden*, mediante la cual sostuvo que presentó un "*proof of claim*". Sin embargo, manifestó que era irrelevante, puesto que, a su causa de acción le aplica una excepción, y es que, no se deben considerar como descargas las causas de acción o reclamaciones por fraude, negligencia crasa, entre otras.

En respuesta, el 5 de junio de 2023, el ELA presentó una moción, en la que sostuvo que en efecto el señor Benítez presentó un "*proof of claim*". Sin embargo, este fue tardío, ya que la fecha límite era el 29 de junio de 2018, y su reclamo fue presentado el 13 de junio de 2022. A su vez, esbozaron que la reclamación por fraude o falsas representaciones, en la Ley PROMESA no fueron incorporadas como parte de las excepciones para el descargue.

El 9 de junio de 2023, el apelante presentó su oposición a la moción del ELA, y reiteró que la Sección 1.421 del Plan de Ajuste bajo PROMESA incluye una disposición la cual expresamente dispone que no se consideraran como descargas las causas de acción o reclamaciones cuando hubo fraude, negligencia crasa, mala fe, entre otras. A su vez, arguyó que el ELA omitió señalar que la Sección 944 del Código de Quiebras, expresamente adopta la Sección 301 de PROMESA. Por lo tanto, reiteró que es irrelevante si se presentó oportunamente el "*proof of claim*".

Luego de otras incidencias procesales, el 9 de enero de 2024, el foro primario notificó una *Sentencia*

*Enmendada Nunc Pro Tunc*. Mediante el referido dictamen, concluyó que además de haber sido presentado tardíamente el "*proof of claim*", dicho foro estaba vedado de hacer interpretaciones sobre el Plan de Ajuste o casos relacionados con PROMESA. Por lo tanto, declaró *Ha Lugar* la solicitud de desestimación presentada por el ELA, y contra todas las partes co-demandadas.

En desacuerdo, el señor Benítez acude ante este Foro y esboza como primer señalamiento de error, que incidió el foro primario al desestimar la demanda por entender que carecía de jurisdicción sobre la materia, puesto que, concluyó no podía entrar a determinar controversias sobre la interpretación de las disposiciones del Plan de Ajuste y casos de Título III de Promesa.

En esencia, arguye que el foro de instancia no debió desestimar la demanda por falta de jurisdicción, puesto que la disposición en el Plan de Ajuste y PROMESA es clara, y tiene jurisdicción concurrente para aplicar la excepción expresa a la descarga por razón de fraude que dispone el Plan de Ajuste.

Como cuestión de umbral, el Tribunal General de Justicia es de jurisdicción general. Por lo tanto, nuestros tribunales están facultados para atender todo tipo de controversias, a menos que estemos limitados por una ley que así lo establezca. Ciertamente, los tribunales debemos ser celosos con nuestra jurisdicción. Por ello, estamos facultados, a instancia propia, para decretar, de así proceder, la falta de jurisdicción sobre la materia en cualquier etapa de los procedimientos.

Así pues, debemos de determinar si la causa de acción o reclamo que presentó el apelante conlleva una interpretación o ejecución del Plan de Ajuste, conforme a la Sección 91.1 sobre la retención de jurisdicción por parte del Tribunal de Distrito, y haya provocado que el foro primario determinara que no tenía jurisdicción sobre la materia.

Surge del caso de autos, que la reclamación y causa de acción que presentó el señor Benítez gira en torno a un alegado fraude e incumplimiento de contrato por parte del ELA, y otras entidades. A su vez, expresó que el "*proof of claims*" era irrelevante, puesto que, conforme dispone la Sección 1.421 del Plan de Ajuste, a modo de excepción, la descarga no procedería cuando la causa de acción o reclamo contra el deudor es por razón de fraude, negligencia grave, u otras.

Luego de evaluar la demanda de autos, la totalidad del expediente y el derecho aplicable nos resulta forzoso concluir que incidió el foro primario al determinar que no tenían jurisdicción sobre la materia. La Sección 91.1 del Plan de Ajustes, establece que el Tribunal de Distrito conservará y retendrá la jurisdicción exclusiva cuando el pleito conlleve una interpretación o ejecución del Plan. Sin embargo, la *Demanda* de autos, va dirigida a determinar si en efecto hubo un alegado fraude e incumplimiento de contrato por la parte apelada, y si ello conllevaría considerar como una descarga de su obligación la causa de acción o reclamación por fraude.

Conforme a la normativa antes expuesta, el descargue de las obligaciones es uno de los beneficios que tiene el deudor -el ELA- que se somete al proceso de

quiebras, permitiéndole comenzar de nuevo su vida financiera. No obstante, la Sección 1.421 del Plan de Ajuste, establece que no se consideraran como descargas las causas de acción o reclamaciones por fraude, negligencia crasa, entre otras. Cónsono con lo anterior, el foro primario lo que debió evaluar era si en efecto hubo un fraude e incumplimiento contractual por la parte apelada, y aplicar la Sección 1.421 del Plan de Ajuste, lo cual no conlleva una interpretación o ejecución del Plan, que evitara atender el caso en sus méritos, y declararse sin jurisdicción.

En cuanto al segundo señalamiento de error, el señor Benítez alega que incidió el foro primario al aplicar el inciso (c) de la Sección 1.421 del Plan de Ajustes, cuando no es el inciso de su aplicación.

En resumidas cuentas, el apelante alega que el ELA indujo a error al foro apelado, puesto que, planteó que la excepción a la descarga por fraude contenida en la Sección 1.421 del Plan de Ajuste no aplicaba a su causa de acción. Añadió que, el foro primario aplicó el inciso (c) el cual está enfocado en las acciones **invocadas** por el "Debtor" (ELA) o "Government Parties" (agencias del gobierno), contra los "Released Parties" y claramente ninguno de estos aplica al apelante. Sino, que el inciso que debió aplicar era el (b), el cual dispone, que por norma general serían descargados los: "Claims and Causes of Action that arise in, are related to or have been or could have been asserted **against** the Debtors or their Assets in the Title III Cases […]". (Énfasis nuestro).

Evaluado el señalamiento de error y el derecho aplicable a la controversia, concluimos que le asiste razón al señor Benítez.

En este caso, el señor Benítez instó un reclamo y causa de acción contra el ELA, la Junta de Retiro y Banco Popular. Conforme se define en la Sección 1.421 del Plan de Ajuste, el *"Released Claim"* al que el apelante le aplica es en efecto el inciso (b).

> 1.421 **Released Claims**: Collectively, (a) with respect to those Entities party to the GO/PBA Plan Support Agreement, the HTA/CCDA Plan Support Agreement, and the PRIFA Plan Support Agreement, Claims and Causes of Action released hereunder and in accordance with the GO/PBA Plan Support Agreement, the HTA/CCDA Plan Support Agreement, and the PRIFA Plan Support Agreement, respectively, **(b) Claims and Causes of Action that arise in, are related to or have been or could have been asserted against the Debtors or their Assets in the Title III Cases,** (c) Claims and Causes of Action that have been or could have been asserted by the Debtors (with respect to releases given by the Debtors) or the Government Parties relating to Claims they have against the Released Parties (with respect to releases given by Releasing Parties) […]. (Énfasis nuestro).

En virtud de lo anterior, procede revocar la sentencia apelada, concluimos que incidió el foro primario al desestimar en su totalidad la *Demanda* de autos.

## IV.

Por los fundamentos antes expuestos, **REVOCAMOS** el dictamen apelado. Por consiguiente, devolvemos el caso al Tribunal de Primera Instancia, Sala de San Juan, para la continuación de los procedimientos conforme a lo aquí dispuesto.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones